IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-280-FL

ROCKY LANE WALTERS,                    )
                                       )
            Plaintiff/Claimant,        )
                                       )
                                       )        **MEMORANDUM AND**
      v.                               )        **RECOMMENDATION**
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

This matter is before the court on the parties' cross-motions for judgment on the pleadings

[DE-12, DE-14] pursuant to Fed. R. Civ. P. 12(c). Claimant Rocky Lane Walters ("Claimant") filed

this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his

application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing

responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully

reviewed the administrative record and the motions and memoranda submitted by the parties, it is

recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion

for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 26, 2011,

alleging disability beginning March 16, 2011. (R. 38, 199-202). His claim was denied initially and

upon reconsideration. (R. 38, 109-34). A hearing before the Administrative Law Judge ("ALJ") was

held on May 28, 2013, at which Claimant was represented by counsel and a witness and a vocational

expert ("VE") appeared and testified. (R. 53-108). On August 23, 2013, the ALJ issued a decision

denying Claimant's request for benefits. (R. 35-52). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 30-34), and submitted additional evidence as part of her request (R. 412-47). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on October 7, 2014. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

2

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred by improperly weighing the opinions of Claimant's treating physicians. Pl.'s Mem. [DE-13] at 8-11.

3

# IV. FACTUAL HISTORY

## A.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act.  At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment.  (R. 40).  Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease of the lumbar spine with significant stenosis at L3-4 and L4-5, bilateral carpal tunnel syndrome, left knee osteoarthritis, tobacco abuse, and obesity.  *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 40-41).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: only occasionally push/pull with his bilateral lower extremities and frequently handle/finger with his bilateral upper extremities; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds.  (R. 41).  In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible.  (R. 44-45).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a material handler.  (R. 46).  Nonetheless, at step five, upon considering

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 46-47).

**B.     Claimant's Testimony at the Administrative Hearing**

Claimant is a high school graduate who last worked on March 15, 2011. (R. 74-75). Claimant was last employed by Eaton Electrical, where he worked for 29 years as a manufacturing technician/stager, and his duties included loading material and staging it on line for other employees to wire. (R. 63, 73). Claimant's left leg was injured in a forklift accident at work, and after having surgery, he returned to work for about four months. (R. 63-64). Claimant testified that at that point his back pain began giving him trouble, and that is why he cannot work. (R. 64). Claimant filed a worker's compensation claim for his left knee, but not for his back, because at the time he was in so much pain from his knee he did not notice his back pain as much and was not sure whether it was work-related. *Id.* Claimant is no longer receiving worker's compensation checks, which stopped when he filed for disability. (R. 65). Claimant is currently on long-term disability because of his back and receives $1,700.00 a month. (R. 65, 72). Claimant testified that his worker's compensation claim has not been settled but his medical bills are being paid. (R. 66, 72). Claimant testified that he had not worked since he left Eaton in 2011, and wage records showing earnings after that date are due to someone else using his social security number. (R. 73-74).

Claimant saw Dr. Whitley for his back pain, but denied that he had a decompression surgery in August 2012, despite Dr. Whitley's notes reflecting the surgery. (R. 76-79). Claimant testified that they talked about the surgery but ultimately did not go through with it. *Id.* Claimant saw Dr. Whitley for the last time in August 2012. (R. 79). Claimant testified that his back pain has gotten

5

worse since August 2012, and his back pain radiates from the middle of his back up through his neck, shoots down his arms, and also down his legs. (R. 81-82). Claimant stated he has pain all the time, and that he was "hurting pretty bad" at the hearing. (R. 82). Claimant rated his pain at a seven out of ten, with ten being the absolute greatest. (R. 82-83). Claimant testified that he has symptoms in his legs every time he walks or when he sits for a long period of time. (R. 83). When he walks, he has shooting pain down his left leg, followed by numbness. *Id.* Claimant has some symptoms in his right leg as well, but it is not as bad as his left leg. *Id.* Claimant has neck pain usually when he is sitting down, but it depends which way he turns or moves. *Id.* When asked how often he experiences the symptoms in his arms, Claimant responded "That depends. When I'm sitting for a long period of time and then when I kind of get up and I move a certain way I'll get that pain. It's not a continuous pain like in my legs. It's just a little small pain that runs – it will run in my arms and my neck." (R. 84). When asked why he had not chosen to have back surgery in light of his symptoms and constant pain, Claimant responded that Dr. Whitley had advised that surgery would not help him. *Id.* Claimant went to physical therapy for less than a week "because they said they couldn't do anything." (R. 85).

Claimant testified that he has pain in his right knee "every now and then" but it does not bother him that much. (R. 86). Claimant has weakness in his left knee, and if he tries to walk or go down steps, his knee is weak and he has a lot of pain. *Id.* Claimant saw Dr. Allen one time for a second opinion. *Id.* Claimant had an arthroscopy on his left knee in 2007, then went back to work for three and a half months. *Id.* Since March 2011, Claimant testified that he has experienced shooting pain, weakness, and swelling in his left knee. (R. 87). Claimant experiences pain every day, which he rated as a five to six out of ten. *Id.* Dr. Gilbert told Claimant that his knee pain was

6

due to arthritis. (R. 89). Claimant receives injections for his knee every six months, and testified that they helped his pain for 60 to 90 days. (R. 87). Claimant experiences swelling in his left knee maybe three times a month, and it depends on how much he has walked or moved. *Id.* Claimant stated that his right knee does not bother him much at all, and because he is not very active, his pain in his left knee is not as bad as it used to be. (R. 89).

Claimant has carpal tunnel syndrome in his left wrist and needs surgery. (R. 88). Claimant has trouble writing because his hands shake and cannot hold onto anything for a long period of time. *Id.* Claimant's hands will go numb when he is driving, and he will have to switch hands. *Id.* Claimant has these symptoms with his left hand any time he tries to grab or hold onto something. *Id.* He testified that he has few problems with his right hand. Claimant was prescribed a brace for his left wrist but does not wear it because he is not working. *Id.* Claimant has not received injections in his wrist and has not yet elected to have surgery. (R. 88-89).

Claimant testified that he has gained almost 40 pounds because he is no longer able to exercise or work in his yard. (R. 89). Dr. Whitley recommended that Claimant try and lose weight, and Claimant stated that his weight affects both his back and his knee. (R. 89-90). Claimant stated that he could lift and carry three to four pounds at a time using both hands, and he can move a gallon of milk from the refrigerator to the counter, but afterwards he has to lie down because of the pain. (R. 90). Claimant's right hand is stronger than his left, but he still experiences the same symptoms if he moves a gallon of milk from the refrigerator to the counter with his right hand only. (R. 91). Claimant is unable to do simple things in the kitchen, such as opening jars. *Id.* Claimant is able to write a little with his left hand, but cannot do so for very long because he is unable to hold onto the pencil. *Id.* Claimant estimated that he could stand for 10 to 15 minutes at a time, but he cannot

7

stand straight up and has to lean on something for support. *Id.* If Claimant goes shopping with his wife, he will push the buggy so that he can lean on it for support and relieve his back pain. (R. 91-92). Most of the time, however, Claimant waits in the car while his wife goes into the store. (R. 92). Claimant has trouble sitting for long periods of time and was in "great pain" during the hearing. (R. 93). When he is at home, Claimant has to move back and forth to relieve his pain while sitting, and is most comfortable when he is lying down. *Id.* Normally, Claimant lies down for four to five hours intermittently throughout the day. *Id.* Claimant was able to walk from his car to the hearing room, but he has to stop frequently while walking. *Id.* Some days Claimant can get the mail in the morning and will not have a lot of pain but other days Claimant will go out to the mailbox and cannot walk back to the house. (R. 93-94). Claimant stays around the house most days, and in addition to checking the mail, walks out back to let his dog out. (R. 94). Claimant has a driver's license and drives three to four times a week. (R. 75-76). Claimant testified that he quit smoking but clarified that he has been doing his best, he had smoked about ten cigarettes in the last three and a half weeks, and had last bought cigarettes four weeks before the hearing. (R. 80-81).

Claimant testified that he cannot hold small objects such as coins, bolts, and screws in his left hand because he cannot squeeze them and he loses strength quickly in that hand. (R. 94-95). Claimant stated that he could hold a cup of coffee or write for less than a minute before having to stop due to his symptoms. (R. 95). Claimant cannot vertically bend due to his lower back and leg pain, but can bend and squat. *Id.* Claimant stated, however, that he did not think he could bend, stoop, or squat for two hours off and on during an eight-hour work day. *Id.* When asked how long he could be on his feet standing or walking during an eight-hour work day, Claimant responded that he could not give an answer because he is always in pain. (R. 96). Claimant testified that he cannot

8

reach overhead because when he raises his arms it pulls in his lower back. *Id.* Claimant can open up the refrigerator door but has not pulled anything heavy and recently pushed the tailgate on his truck closed with his hip and back. (R. 96-97). Because of his back pain, Claimant has trouble with concentration, focus, and staying on task. (R. 97). Claimant does not do any yard work or household chores, and his son helps with those. *Id.* Claimant drives up the road sometimes (less than a mile from his house) but does not engage in any other social activities. (R. 97-98).

## C.    Kimberly Walters' Testimony at the Administrative Hearing

Kimberly Walters ("Walters"), Claimant's wife of almost 24 years, testified at the administrative hearing. (R. 99-100). Walters confirmed that Claimant last worked in March of 2011. (R. 99). Walters testified that Claimant has never worked at Sotote, Inc., C.R. Lane furniture company, or Claremont restaurant—all of these businesses are in western North Carolina. *Id.* After learning that earnings were posted to Claimant's account after his alleged onset date and after March 2011, Walters contacted the payroll divisions for those companies and was told that someone else was using Claimant's social security number. *Id.* The companies promised to send written correspondence to Walters and plan to investigate further. *Id.*

## D.    Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 101-06). After the VE's testimony regarding Claimant's past work experience (R. 102), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and asked whether the individual could perform Claimant's past relevant work assuming the individual can lift 20 pounds occasionally, 10 pounds frequently, sit, stand, and walk for six hours in an eight-hour work day, occasionally push and pull with the bilateral lower extremities,

9

occasionally balance, stoop, and climb ramps and stairs, frequently kneel, crouch, and crawl, never climb ladders, ropes, and scaffolds, and can frequently handle with the bilateral upper extremities. *Id.* The VE responded that such an individual could not perform Claimant's past relevant work but would be able to perform the following jobs: cashier II, DOT # 211.462-010, light, SVP-2; photocopying machine operator, DOT # 207.685-014, light, SVP-2; and small products assembler, DOT # 706.684-022, light, SVP-2. (R. 102-03).

When asked whether the identified jobs would change if the non-exertional postural limitations were changed to the ability to occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, and never climb ladders, ropes, and scaffolds, the VE responded in the negative. (R. 103). The VE stated that if such an individual were only able to occasionally handle and finger with the bilateral upper extremities, all work would be precluded. *Id.* If such an individual could frequently handle and finger with the bilateral upper extremities and all other limitations remained unchanged, except that he can only stand or walk for two hours in an eight-hour work day, the VE stated that the photocopying job would be precluded and the numbers for small products assembler and cashier II would be reduced. (R. 104). Such an individual could also perform the job of office helper, DOT # 239.567-010, light, SVP-2. *Id.* The VE stated that if such an individual could lift up to 10 pounds on an occasional basis, he could perform work at the sedentary level. *Id.* The VE testified that all work would be precluded if the hypothetical individual who could lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand and walk for two hours in an eight-hour work day would need numerous work breaks every hour lasting at least half an hour. (R. 104-05). All work would also be precluded if the same individual would need to miss work more than two times a month on an unscheduled basis. (R. 105).

Counsel for Claimant asked whether any of the identified jobs would be precluded if the hypothetical individual was not capable of working with small objects (such as nuts, bolts, and screws) and could not do any production or assembly-type work. (R. 105-06). The VE responded that the production limitation would preclude the small products assembler position and the inability to finger small objects would preclude the cashier II position and possibly the office helper position. (R. 106). The VE stated that her testimony was consistent with the Dictionary of Occupational Titles, except for the limitation to standing and walking to two hours during an eight-hour work day, which was based on her training, experience, consultation work, and listening to testimony about the work performed. (R. 105).

## V. DISCUSSION

### A. The ALJ's Consideration of the Medical Opinion Evidence

Claimant contends that the ALJ erred by improperly weighing the opinions of Claimant's treating physicians. Pl.'s Mem. [DE-13] at 8-11. Specifically, Claimant argues that the ALJ improperly weighed the opinions of Dr. Allen, Dr. Whitley,[2] and Dr. Gilbert. *Id.* at 8. However, as Claimant only discusses specific opinions from Drs. Allen and Whitley, the undersigned will only consider whether the ALJ properly considered those opinions. *Id.* at 9-11. The Government argues that substantial evidence supports the ALJ's consideration of the medical opinion evidence.

The regulations require the ALJ to consider all evidence in the record when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more

---

[2] Although the memoranda of both Claimant and the Government refer to opinions from Dr. Whitley and Dr. Whitney, the record demonstrates that Claimant was never seen by a Dr. Whitney.

weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). More weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ is not required, however, to discuss all of these factors. *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing *Oldham v. Astrue*, 509 F. 3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)). While an ALJ is under no obligation

12

to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (unpublished) (citations omitted), *adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013). Further, a treating source is an acceptable medical source who has had "an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1502. Such an ongoing treatment relationship occurs when a claimant sees the medical source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* Additionally, an acceptable medical source cannot be a treating source if the claimant's "relationship with the

13

source is not based on [the claimant's] need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [his or her] claim for disability." *Id.*

### 1. Dr. Whitley's Opinions

Claimant argues that the ALJ erred by failing to give controlling weight to three opinions authored by Dr. Whitley, from February 21, 2012 (R. 283), August 2, 2012 (R. 321-22), and June 5, 2013 (R. 411), and failed to properly consider the relevant factors. Pl.'s Mem. [DE-13] at 8-12. Further, Claimant argues that the ALJ failed to even mention the February 21, 2012 opinion. *Id.* at 9. In response, the Commissioner argues that substantial evidence supports the ALJ's consideration of Dr. Whitley's opinions, where Dr. Whitley was not a treating physician because he only actually examined Claimant twice and Dr. Whitley's opinions are undercut by the fact that he describes a surgery taking place which Claimant testified was never performed. Def.'s Mem. [DE-15] at 16-19.

The February 21, 2012 opinion from Dr. Whitley is contained on a "Return-to-Work Status Form" bearing the logo of Claimant's employer. (R. 283). On the form, Dr. Whitley indicates that the earliest or estimated date the employee could return to work was unknown, Claimant's impairment was expected to be indefinite, Claimant was unable to work due to pain, and indicated that upon return Claimant would have functional limitations or restrictions from performing the essential functions of his position. *Id.* However, Dr. Whitley did not provide a response to the portion of the form that asked for "a detailed description of the specific functional limitations." *Id.* In a letter dated August 2, 2012, Dr. Whitley wrote that Claimant "underwent decompression at L4-5 for stenosis with implantation of an intraspinous spacer fusion device. Since that time, [Claimant] has done reasonably well but still has pain in the 4-5 range on a 10 scale." (R. 321). Further, Dr. Whitley wrote that "it is unlikely that [Claimant] is employable, not only due to his back condition,

14

which is degenerative, but also due to his left knee function as well. That coupled with his obesity is pathology that I believe should be considered in proceeding with disability benefits for this gentleman." *Id.* Then in a letter dated June 5, 2013, Dr. Whitley wrote that Claimant "has documented significant lumbar pathology that includes severe degeneration of the L4-5 disk [sic] combined with facet hypertrophy with foraminal stenosis." (R. 411). Dr. Whitley indicated that the June 5, 2013 letter was intended to replace the August 2, 2012 letter, removed the language about the decompression surgery, and included the same indication that "it is unlikely that [Claimant] is employable." *Id.*

> In discussing Dr. Whitley's opinions, the ALJ stated as follows:

> Little weight is given to the opinions of the claimant's treating physician, Dr. Whitley, who indicated that the claimant continued to suffer from back pain and lower extremity pain, which rendered him unemployable. Dr. Whitley also noted that the claimant did well following surgery in August 2012, when it did not appear that surgery actually took place. He further noted in June 2013 that the claimant continued to be symptomatic and that any type of strenuous work increased his back pain. Dr. Whitley opined that the claimant's condition was disabling and that he was unemployable (Exhibits 5F; 18F). However, the records show Dr. Whitley's opinions were based only upon subjective back pain and the MRI findings and Dr. Whitley never saw the claimant against after August 2012.
> . . .
> The records indicate that the claimant was required to file for Social Security disability benefits, as he was receiving long-term disability from his employer. Dr. Whitley indicated in a statement dated February 24, 2012, that the claimant's impairment/disability status was indefinite, but that he was unable to work at present (Exhibit 10E, p.3). Little weight is also afforded this opinion as it was for the purpose of long-term disability only.

(R. 45). Claimant alleges that the ALJ erred by failing to mention one of Dr. Whitley's opinions, and by failing to consider the proper factors in weighing the opinions—namely, that the objective evidence supports Dr. Whitley's opinions and that Dr. Whitley is a neurosurgeon and a specialist. Pl.'s Mem. [DE-13] at 9-11. However, substantial evidence supports the ALJ's consideration of Dr.

15

Whitley's opinions. Initially, Claimant's contention that the ALJ failed to mention one of Dr. Whitley's opinions is without merit. The ALJ referenced Dr. Whitley's opinions at Exhibits 5F, 18F, and 10E (R. 45), which correspond to Dr. Whitley's opinions as laid out above. *See* (R. 283, 321-22, 411). While the ALJ referred to an opinion dated February 24, 2012 (R. 45), it is clear from the discussion and the record citation that the ALJ was considering the February 21, 2012 return-to-work status form contained at page 283 of the record.

Here, the ALJ gave good reasons, supported by substantial evidence, for giving little weight to the opinions of Dr. Whitley. As to the August 2012 and June 2013 letters, the ALJ afforded them little weight because Dr. Whitley discusses Claimant recovering well from a surgery that did not take place, the opinions were based on Claimant's subjective complaints of pain, and Dr. Whitley did not treat Claimant after August 2012. (R. 45). It appears that one sentence may be missing a phrase discussing the MRI findings, as it reads "However, the records show Dr. Whitley's opinions were based only upon subjective back pain and the MRI findings and Dr. Whitley never saw the claimant against after August 2012." *Id.* The Fourth Circuit has held that an omission is an error requiring remand where the court is "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended[.]" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (remanding where the ALJ's discussion of an opinion "trails off right where [the ALJ] was poised to announce the weight he intended to give it[.]"). Here, in contrast, other reasons remain explaining why the ALJ gave little weight to these opinions. The ALJ notes that these opinions are based largely on Claimant's subjective complaints of pain. "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report

16

subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore*, 2013 WL 5366967, at *11. Additionally, Dr. Whitley discussed that Claimant recovered well after a surgery which Claimant testified did not actually take place (R. 76-77, 321), demonstrating that the opinion was not supportable and was inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(ii)(3) & (4) (listing the factors to be considered, including consistency and supportability). Finally, the ALJ noted that Dr. Whitley did not treat Claimant after August 2012 (R. 45), which is supported by the record evidence documenting only four treatment visits with Dr. Whitley, and is a factor properly considered under the regulations. 20 C.F.R. § 404.1527(c)(i) (listing length of the treatment relationship and frequency of examination as factors to be considered); (R. 294) (July 12, 2011 treatment note); (R. 314) (August 24, 2011 treatment note); (R. 346) (March 1, 2012 treatment note); (R. 347) (August 1, 2012 treatment note).

As to the February 21, 2012 return-to-work status form, the ALJ discounted this opinion because "it was for the purpose of long-term disability only." (R. 45). On this form, Dr. Whitley indicated that Claimant could not work due to pain, it was unknown when Claimant could return to work, and Claimant's impairment/disability status was expected to last indefinitely. (R. 283). The regulations provide that an opinion about whether a claimant is disabled is not a medical opinion, but instead is an opinion on an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1). Such an opinion on an issue reserved for the Commissioner (such as whether a claimant is disabled) is not entitled to "any special significance." *Id.* § 404.1527(d)(3). Accordingly, the February 21, 2012 opinion of Dr. Whitley could not be entitled to controlling weight, as Claimant argues, and the ALJ properly afforded it limited weight.

Claimant correctly points out that ALJ did not discuss that Dr. Whitley is a specialist and that

17

some of the objective record evidence supports Dr. Whitley's opinions. The ALJ is not required, however, to discuss all of the factors in 20 C.F.R. § 404.1527 when considering a medical opinion. *Ware*, 2012 WL 6645000, at *2. Further, the court "must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." *Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. 2015) (unpublished) (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). Where a treating physician's opinion is inconsistent with and is not supported by the record evidence, the ALJ may give the opinion limited weight. *See* 20 C.F.R. § 404.1527. Although there is some evidence in the record which would support Dr. Whitley's opinions, such as MRI records documenting Claimant's degenerative disc disease, there is more than a "scintilla of evidence" supporting the ALJ's decision to discount Dr. Whitley's opinions. *Dunn*, 607 F. App'x at 271 (concluding the ALJ did not err in affording limited weight to a treating source opinion where "there is more than a 'scintilla of evidence' in the record supporting the ALJ's conclusion" to discount the physician's opinion). Accordingly, the ALJ did not err in evaluating Dr. Whitley's opinions.

### 2. Dr. Allen's Opinion

Claimant argues that the ALJ erred by failing to give controlling weight to the opinion of Dr. Allen, where the objective evidence supported Dr. Allen's opinion and the ALJ did not consider that Dr. Allen was a specialist. Pl.'s Mem. [DE-13] at 10-11. In response, the Commissioner argues that substantial evidence supports the ALJ's consideration of Dr. Allen's opinion, which cannot be afforded controlling weight where Claimant only saw Dr. Allen one time for a second opinion. Def.'s Mem. [DE-15] at 15-16.

Claimant saw Dr. Allen for one visit, and Dr. Allen opined that Claimant had reached maximum medical improvement after his left knee injury which occurred at work, and gave

18

Claimant a 20% partial permanent disability rating. (R. 382-85). Dr. Allen also restricted Claimant

to "no climbing at work, [and] no standing on left lower extremity more than 15 minutes at work."

(R. 385). The ALJ discussed Dr. Allen's opinion, noting the following:

> Little weight is given to the opinion of Dr. Allen, as he only examined [Claimant] on
> one occasion for a second opinion in February 2013. Dr. Allen indicated that the
> claimant had reached maximum medical improvement with a 20 percent partial
> permanent disability, and felt that he would be restricted to no climbing at work and
> no standing on the left lower extremity more than 15 minutes (Exhibit 13F, p.12).
> The undersigned finds no basis for the standing limitations, as none of the claimant's
> treating providers had given the claimant any specific exertional limitations.

(R. 45). In his hearing testimony, Claimant confirmed that he saw Dr. Allen for a second opinion

during his worker's compensation case. (R. 66).

The Commissioner correctly notes that Dr. Allen cannot be considered Claimant's treating

physician and Dr. Allen's opinion is thus not entitled to controlling weight where he only examined

Claimant once for a second opinion. Def.'s Mem. [DE-15] at 15-16; 20 C.F.R. § 404.1502 (defining

a treating source as an acceptable medical source who has had "an ongoing treatment relationship"

with the claimant). Additionally, the ALJ points out that the limitations imposed by Dr. Allen were

not identified or supported by doctors who did have an ongoing treatment relationship with

Claimant. Indeed, the record includes treatment notes from Dr. Stewart, which would not indicate

that Claimant was limited as alleged by Dr. Allen. *See* (R. 433-34) (March 30, 2011 treatment note

where Dr. Stewart states that Claimant's knee pain has improved, Claimant has normal range of

motion in the spine, legs, and feet, and Claimant's gait was normal); (R. 439) (May 7, 2012 treatment

note where Dr. Stewart described Claimant as being "robust, ruddy-faced, obese Caucasian male

who is all smiles. Moves nimbly through the examining room [without] difficulty."); (R. 445) (July

2, 2013 treatment note where Dr. Stewart described Claimant as having a normal range of motion

19

in the spine, legs, and feet). And as discussed above, while the ALJ did not explicitly consider the fact that Dr. Allen is a specialist, the ALJ is not required to discuss every factor in 20 C.F.R. § 404.1527 when considering a medical opinion. *Ware*, 2012 WL 6645000, at *2. Accordingly, where the ALJ's reasons for discounting Dr. Allen's opinion are supported by substantial evidence and where Dr. Allen is not a treating physician whose opinion may be given controlling weight, substantial evidence supports the ALJ's consideration of Dr. Allen's opinion.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-12] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-14] be ALLOWED and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 11, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **10 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum**

20

and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 26 day of February, 2016.

Robert B. Jones, Jr.
United States Magistrate Judge